# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,    )<br>                              )<br>         Plaintiff,           )<br>                              )<br> vs.                          )<br>                              )<br> Jessica Marie Trottier,      )<br>                              )<br>         Defendant.          )| Case No. 3:22-cr-184<br><br>**ORDER TO PROVIDE DEFENDANT<br>WITH HARDWARE<br>TO REVIEW DISCOVERY** |

Jessica Marie Trottier is currently detained pending trial. Citing the extensive volume of discovery materials and counsel's distance from the facility at which Trottier is detained, Trottier requested the court provide her with the means to review discovery electronically while detained. (Doc. 976). The United States did not object to the request, and the court issued a January 24, 2025 order granting the request. Later the same day, the United States filed an "Objection to Providing Defendant with Discovery Materials," stating it made "a clerical error in not filing this sooner" and asking that its filing be considered either as its response to Trottier's motion or as a motion to reconsider the January 24 order. (Doc. 1015, p. 1 n.1). The court advised the parties it would treat the United States' January 24 filing as a motion to reconsider and gave Trottier time to respond to that filing. (Doc. 1016). She did so on February 3, 2025. (Doc. 1020).

A stipulated discovery order details discovery materials the United States agrees to provide to Trottier's counsel, but the order allows Trottier to possess only those materials that are subject to disclosure under Federal Rule of Criminal Procedure 16, Brady v. Maryland, 373 U.S. 83 (1963), or the Jencks Act, 18 U.S.C. § 3500. (Doc. 765,

p. 2). According to the United States, it has provided Trottier's counsel "materials beyond the requirements of Rule 16 and Jencks, including cooperators' statements." (Doc. 1015, p. 13). Trottier's motion sought authorization for her to review, though not possess, the material not covered by Rule 16 or the Jencks Act outside the presence of counsel.

As the United States argues, and Trottier does not contest, it is well-settled that a defendant generally has a right to review discovery materials, but that right does not necessarily include a right to possess those materials. See United States v. Driscoll, 122 F.4th 1067 (8th Cir. 2024). Nor is there dispute that neither Rule 16, nor the Jencks Act, requires that a defendant be provided all discovery materials prior to trial.

In its motion for reconsideration, the United States argues Trottier "previously tried to have someone killed multiple times as a result of her review of discovery" and has "continued to attempt to tamper with witnesses while incarcerated even after losing her job in jail and being charged with witness tampering crimes." (Doc. 1015, p. 1). The United States expresses fear Trottier would use information in the discovery materials to disseminate cooperators' statements with "the specific purpose to tamper with witnesses." Id. at 13. Further, the United States asserts there are other options available to allow Trottier to adequately review discovery materials.

In her response, Trottier asserts "[i]t is no secret" that all nineteen codefendants will testify against Trottier and she "knows who has cooperated and provided information" to law enforcement agents. (Doc. 1020, p. 2). Further, she points to the locations of both counsel appointed to represent her being a significant distance from the facility where she is currently detained and contends neither of her counsel "can afford the time it will require to review the voluminous discovery" with Trottier,

regardless of the location at which she is detained. Id. And, as her counsel asserts and the court and the United States are aware, the relationship between Trottier and her counsel is unstable; Trottier's counsel asserts allowing Trottier to review discovery materials outside the presence of counsel will nurture the attorney-client relationship.

The United States points to a previous order allowing Trottier access to discovery materials while detained, (Doc. 322), which was later revoked based on the United States' assertions that she had used discovery materials to attempt to orchestrate the murder of a codefendant whose statements to law enforcement had led to Trottier's arrest, (Doc. 341).[1] Additionally, the United States proffered evidence of recorded jail calls and letters in which Trottier allegedly attempted to use her job in the jail laundry to communicate with other coconspirators to convince them not to talk with law enforcement agents. In a grievance filed after Trottier lost her job in the jail laundry, she wrote, "I don't need to contact them thru laundry when we have a friend who visits all of us on the kiosk." (Doc. 1015, p. 5).

The United States proffered evidence of letters Trottier wrote to a codefendant after a superseding indictment added charges of witness tampering. The letters make no direct threats and, though Trottier contacting co-defendants is certainly ill-advised, there is no court order prohibiting her from doing so. Based on those letters, the United States argues Trottier "will go so far as to try to have witnesses killed if she believes they are a 'rat'" and allowing her the access to the discovery materials as she requests "will subject more witnesses and coconspirators to tampering attempts." Id. at 9.

---

[1] The United States' assertion of Trottier having used discovery materials provided to her to attempt to arrange the murder of an alleged co-conspirator refers to material provided to her as part of a state case. (Doc. 1015, p. 2). As to this case, Trottier has not yet been allowed to review witness statements outside the presence of counsel.

3

The United States asserts "inmates are adept at secreting devices that can be used to record, photograph, and/or copy discovery materials viewed on [a] computer" and use of a "clean" computer does not prevent inmates from doing so. The United States goes on to argue danger to cooperators is enhanced if a defendant devises a means to copy actual witness statements and disseminate those copies via social media or otherwise. Indeed, this district has seen cases in which other inmates have copied and disseminated witness statements in violation of the stipulated discovery order.

The United States suggests other options to allow Trottier to review the discovery materials while detained: (1) counsel meeting with Trottier in person, (2) counsel being authorized to hire an investigator to review discovery materials with Trottier in person, (3) counsel providing a summary of discovery materials to Trottier, (4) allowing the United States to conduct a "reverse proffer" of Trottier, or (5) Trottier being transferred to a detention facility closer to appointed counsel. Given the volume of discovery materials, in-person review of all discovery materials with Trottier, either by counsel or an investigator, would require many, many hours. That would be true regardless of whether Trottier is detained at a facility closer to counsels' locations. It is not likely providing a summary of discovery materials to Trottier or the United States conducting a "reverse proffer" would satisfy concerns about the relationship between Trottier and her counsel.

The court understands that discovery materials in this case are indeed voluminous: perhaps more than 50,000 pages of documents, along with various recordings and electronic device downloads. And the court is quite familiar with the relationship between Trottier and her counsel. The United States has not proffered any evidence of a defendant detained at the facility where Trottier is currently detained

4

having somehow copied and disseminated materials in violation of a stipulated discovery order. Given the status of the case, the court accepts Trottier's assertion that she knows the identities of witnesses likely to testify against her. And the evidence the United States has proffered shows the United States is able to diligently monitor Trottier's communications while she is detained. It is apparent the United States has done so throughout her confinement.

Considering all evidence proffered and arguments of both Trottier and the United States, the court will grant Trottier's request in part, allowing Trottier to review discovery materials **other than statements of cooperating witnesses** outside the presence of counsel.

The acquisition of hardware and software is authorized under the Criminal Justice Act (CJA). See 18 U.S.C. § 3006A; Guide to Judiciary Policy, Vol. VII, Defender Services, Ch. 3, § 320.70. Trottier has been found to be eligible for services under the CJA; therefore, she is eligible for assistance with hardware and software enabling her to review discovery, authorized by 18 U.S.C. § 3006A(e). The court finds it would be beneficial to allow Trottier the opportunity to review certain discovery produced in this case, as it would assist her counsel in adequately preparing for trial. The following information, however, **SHALL NOT** be included in the discovery: any **copies of statements of cooperating witnesses**, image copies of web-based accounts, computer hard drives, cellphones, SD cards, thumb drives or any other electronic devices and any corresponding forensic reports (Cellebrite, Encase, IEF and FTK). However, Trottier shall receive any summary reports of the above-mentioned forensic reports.

5

Subject to the limitations listed above, to the extent it has not already done so, the court approves and hereby **ORDERS** the Office of the United States Attorney to provide Trottier's counsel with Bates numbered discovery and audio/video recordings that accompany such discovery. The discovery shall be provided in standard Windows formats (PDF, MPEG, MP3, AVI, MOV, etc.). The Federal Public Defender's Office (FPD) shall provide an encrypted USB hard drive to Trottier's counsel, who shall load the discovery on the storage device. Data on the storage device shall be encrypted requiring use of a Personal Identification Number (PIN) to access. In the event defense counsel needs assistance transferring discovery to the hard drive, staff of the United States Attorney's Office is available for consultation or training. The storage device shall be labeled:

| | |
|---|---|
| Property of FPD<br>U.S. v. Jessica Marie Trottier<br>Case No. 3:22-cr-184 | Return to:<br>Thomas A. Dickson<br>Dickson Law Office<br>P.O. Box 1896<br>Bismarck, ND 58502-1896 |

Trottier's counsel shall provide the detention facility where Trottier is held with the storage device and a pre-addressed, pre-paid return mailer. Trottier's counsel, by oral communication, shall provide Trottier with the PIN. The detention facility shall provide safekeeping of the storage device and allow Trottier reasonable access to a computer to which the storage device can be connected to review discovery. Trottier shall lock the storage device after each use. The detention facility shall secure the storage device when not in use. The detention facility shall return the storage device to Trottier's attorney when she moves from the facility. Unless otherwise ordered by the court, within 30 days after final judgment is entered in this case, Trottier's counsel shall

secure the return of the storage device from the detention facility, wipe all data from the storage device, and return it to the FPD.

It is **FURTHER ORDERED** that the encrypted storage device and its contents shall remain in the sole custody of the detention facility at which Trottier resides. The storage device shall at all times remain the property of the FPD. Trottier's counsel and any detention facility acting as custodian of the storage device shall use due diligence and care to maintain the property in good condition. **Trottier shall not make any copy of the discovery, paper or electronic. Trottier is prohibited from discussing any of the discovery material with anyone except her counsel and staff employed by her counsel. Trottier's counsel shall be responsible for explaining the terms of this order to Trottier**

Within **ten days** of the date of this order, the United States shall provide a listing, by page numbers, of the statements of cooperating witnesses that are to be excluded from the documents made available for Trottier's review outside the presence of counsel.

The Clerk's Office is directed to provide a copy of this order to the FPD and the United States Marshal Service.

**IT IS SO ORDERED**.

Dated this 21st day of February, 2025.

/s/ *Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge